ALEXANDER H. RICE & others *vs.* RICHMOND J. LANE & others.

Suffolk.    March 24, 1896. — May 23, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Trust — Distribution of Fund — Rights of Creditors as to Priority — Equity.*

A trust was created to carry on a manufacturing business for the benefit of creditors of its former owner, who had failed; of a bank which, in addition to being a creditor, agreed to advance money to the trust; and, if there should be a surplus, of the original owner of the business. By the terms of the trust the expenses of operating the business were to be paid out of its proceeds and the proceeds of the trust property before any payment to the beneficiaries. After the trustee's assumption of the business, it was discovered that he had misappropriated the funds of the A. estate, of which he was also trustee, and the funds of the bank, of which he was an officer, and had put the funds into the business. Thereupon another indenture was made between the trustee, purporting to act as trustee and individually, and the persons interested in the A. estate, the general purpose of which was to secure to those persons the payment of the debts arising from the misappropriation, and the effect of which was to appropriate to the reduction of their own claims a large part of the property of the trust and to receive a mortgage of the business plant, with an agreement that the business should be carried on by the trustee under their supervision and substantially under their control; and they subsequently foreclosed the mortgage, after the trustee had continued to carry on the business and had incurred debts therein. The B. estate had a claim against the owner of the business at the time of his failure, and the claimants were parties to the original trust indenture. They knew of and acquiesced in the making of the second indenture, and reduced their claim, which was to be paid before the claim of the A. estate, to a sum for which they were to receive new notes from the trustee, part of which only were delivered, and none were paid. *Held,* upon a bill in equity by a general business creditor of the trust for the distribution of the fund realized from the conversion into money of the assets of the trust by a receiver, that the claims of the A. estate and the B. estate were each to be postponed until after the payment of the general business creditors of the trust, whose claims were for debts incurred in carrying on the business, mostly or wholly after the second indenture was made; and that the claim of the B. estate was entitled to priority of payment over the claim of the A. estate.

BILL IN EQUITY, filed January 19, 1888, by the members of the firm of Rice, Kendall, and Company, in behalf of themselves and other creditors of Richmond J. Lane similarly situated, against said Lane, Edgar J. Sherman, and Charles U. Bell, trustees of the estate of Arianna Davis, and George H. Hunt, for the ap-

pointment of a receiver to take charge of certain trust property originally held in the name of said Lane as trustee, and by him conveyed to the defendant Hunt, to convert the same into money, and to distribute it among the creditors of the trust estate, and any surplus among the beneficiaries named in the trust deed. A receiver was appointed, and the case was afterwards sent to a master to hear and determine the validity of certain contested claims against the trust estate, among which were two presented by said Sherman and Bell as such trustees, and by Lewis Reed, said Hunt, and Charles G. Reed, trustees under the will of Washington Reed. To the master's report thereon exceptions were filed, and heard before *Holmes*, J., who entered a decree, from which the excepting parties appealed to the full court. The facts appear in the opinion.

*R. Stone*, for the trustees under the will of Washington Reed.
*C. U. Bell*, for the trustees of the Davis estate.
*L. D. Brandeis & W. H. Dunbar*, for the business creditors.

BARKER, J. The suit is for the distribution of a fund which comes from the conversion into money of the assets of a trust by the receiver, under which a manufacturing business had been prosecuted. The amount of the fund, including a partial distribution heretofore made, is about twelve thousand dollars.

Claims of general business creditors have been allowed to the amount of $18,487.39. The claims of the Reed estate have been fixed by the master's report at the sum of $42,907.32, and the claims of the Davis estate at the sum of $8,063.24; but the report finds that neither of these claims can share in the fund until the general business creditors have received full payment of their claims as allowed, and that the Reed claim should be further postponed until after the payment of the Davis claim.

The final decree, from which the appeal was taken, overrules the exceptions to the report of the master, confirms the report, and orders that the fund, after payment of charges, be distributed among the general business creditors whose claims have been allowed.

The trust was set on foot to carry on a business for the benefit of creditors of its former owner, who had failed; of a bank which, in addition to being a creditor, agreed to advance money to the trust; and finally, if there should be a surplus, for the

benefit of the original owner of the business. By the terms of the trust, the expenses of operating the business were to be paid out of its proceeds and the proceeds of the trust property before any payment to the beneficiaries.

The claims which under the decree will now share the fund, and the payment of which in full would more than exhaust it, are debts incurred in carrying on the business. The Davis claim had its origin in a debt due from the owner of the business at the time of his failure, and the then holders of the debt were parties to the trust indenture. The Reed claim arose after the assumption of the business by the trustee, through his misappropriation of the funds of another estate of which he was also a trustee, and of the funds of the bank of which he was an officer, and through his putting these misappropriated funds into the business.

When this was discovered, another indenture was made between the trustee, purporting to act as trustee and individually, and the parties interested in the estate the funds of which had been wrongfully put into the business. The general purpose of this indenture was to secure to those parties the payment of the debts arising from the misappropriation.

Under this indenture the trustee, besides transferring to the other parties property and securities which are not stated to have been either wrongfully or rightfully a part of the trust property, conveyed and delivered to the present holders of the Reed claim certain merchandise, notes, accounts, and contracts of the trust, and mortgaged to them the business plant of the trust for an amount which was the then agreed balance of his debt to the parties interested in the estate which he had misapplied, including, in arriving at this balance, the sums paid by them to reimburse the bank for his misappropriation of its funds. He also agreed to further carry on the business, but with such stipulations as gave the holders of the Reed claim the supervision of the business and practically a voice in its management, and, if these stipulations were not complied with by the trustee, the power to stop the business by at once foreclosing their mortgage.

In furtherance of the arrangement made by the second indenture, the holders of the Davis claim, knowing and acquiescing

in that arrangement, cut down their claim against the trust to the sum of $4,000, for which they were to receive new notes to be made by the trustee, payable in instalments within two years. But of the new notes two only were delivered, and neither of them was paid.

After the making of the new arrangement, the trustee continued to carry on the business until the holders of the Reed claim compelled him to transfer the business and all the property held by him as trustee to the defendant Hunt, by an assignment which provided that all the debts which had been or might be incurred in administering the trusts and carrying on the business should be entitled to payment in full before any payment should be made to the beneficiaries under the trust. Soon after, the holders of the Reed claim foreclosed their mortgage. This bill was filed two days after the beginning of the foreclosure proceedings, and was brought by a general business creditor of the trust.

The claims which, under the decree, are to share in the distribution of the present fund, are all debts incurred in carrying on the business, and are mostly if not wholly debts so incurred after the new arrangement was made by the second indenture.

Assuming in favor of the holders of the Reed claim that they could treat the debt created by the wrongful mingling of the funds of the bank with the trust property as a debt incurred by the trustee in carrying on the business of the trust, and as transferred to themselves, and could so treat the debt created by the like misapplication of the funds of the Reed estate, it would follow, as contended in their behalf, that, upon the discovery of the misappropriations, the debts so created would rank with the general business debts incurred by the trustee in carrying on the business. But instead of seeking to share in the trust fund with the other business creditors of the trust by an arrangement with the trustee, to which the general business creditors of the trust were not parties, they appropriated to the reduction of their own claims a large part of the property of the trust, and received a mortgage of the business plant for the balance, with an agreement that the business should be further carried on by the trustee under their supervision and substantially under their control. The necessary effect of this arrangement was to deplete

in a great measure the property of the trust, while for their benefit it was continued in a business in which debts were to be incurred. The natural result of this arrangement was to enable the holders of the Reed claim to perfect the application of so much of the trust property as was conveyed and mortgaged to them to the extinguishment of a part of their demand and the securing of the balance, without regard to the equal rights in the fund of the general business creditors of the trust, and with a certainty that fresh debts were to be contracted in the further prosecution of the business over which, through the trustee as their agent, they asserted full control. These circumstances make it inequitable that the Reed claims should be paid out of the present fund until after the general business creditors have been paid. The holders of the Reed claims must, as to the general business creditors, be held to have left the balance of their claims at the risk of the business, after the making of the second indenture, and the payment of the Reed claim is properly postponed until after the payment of the general creditors.

The Davis claim, by the terms of the original trust, is subordinated to the debts incurred in carrying on the business of the trust, and for this reason, and also because its holders acquiesced in the arrangements made by the second indenture, that claim is not to be paid out of the present fund until after the payment of the general business debts. During the whole time, the business was the business provided for in the original trust agreement; and after the new arrangement, as well as before, it was carried on with the acquiescence of the holders of the Davis claim, and nothing has occurred to give them the right to share in the trust property before the ordinary debts incurred in carrying on the business have been paid in full.

Whether the Davis claim shall stand at its original amount of $8,063.24, as reported by the master, or be cut down to $4,000, as was agreed by its holders in connection with the new arrangement made by the second indenture, and whether it is entitled to a preference over the Reed claim, seems of no practical importance in the present suit. As the new arrangement was one made for the benefit of the holders of the Reed claim, and as but a part of the new notes were delivered and none of them were paid, and as under that arrangement the Davis claim was

to be paid before the Reed claim, and as the Reed claim was in fact represented by a secured note, we think the master's report was right in both respects.                    *Decree affirmed.*